**United States District Court**
For the Northern District of California

1
2  UNITED STATES OF AMERICA,        )
                                    )
3                   Plaintiff,      )
                                    )
4         v.                        )
                                    )    No. CR—10-0659 DLJ
5  CORNELL MAXEY, Jr.,              )
                                    )    **ORDER**
6                   Defendant.      )
7  _____  )

8

9        On April 29, 2011, the Court heard argument on Defendant

10 Maxey's Motion to Suppress Evidence. James Mann appeared on behalf

11 of the government; Joyce Leavitt appeared for defendant Cornell

12 Maxey, Jr. ("Maxey").  After the hearing, the Court held an *in*

13 *camera* session discussed in greater detail below.  The Court held

14 further hearings on the matter on May 20, 2011 and July 22, 2011.

15 Having considered the arguments of counsel, the papers submitted,

16 the applicable law, and the record in this case, the Court hereby

17 denies defendant's Motion to Suppress.

18

19 I.    **Factual Background and Procedural History**

20       On May 14, 2010, Oakland Police Officer Steve Valle ("Officer

21 Valle") submitted an affidavit to obtain a warrant to search a

22 residence in Oakland, California, for drugs, for guns, and for gang

23 indicia based upon alleged criminal conduct by the defendant. See

24 Affidavit for Search Warrant, attached as Exhibit A to defendant's

25 Motion to Suppress.

26       The affidavit stated that Officer Valle knew Maxey to be a

27 member of "significant status" of a gang in West Oakland. Exhibit A

28

**United States District Court**
For the Northern District of California

at 3. Officer Valle had investigated Maxey over the past several years for "his involvement in the narcotics and firearm trade" within the gang. Id. The affidavit said that Officer Valle had seen Maxey during the preceding four months in the neighborhood where the gang had its turf, wearing gang-related baseball caps, surrounded by other gang members "known and unknown" to the Officer and involved in what the Officer "believes is facilitating narcotics sales" between other gang members and unknown people. Id.

During the preceding few months, Officer Valle also had seen Maxey driving an older, four-door, black Escort. Id. According to the affidavit, Officer Valle had received information from a confidential informant ["CI"] that the CI had seen a man he knew as "Corn" or "Cornell" (whom the CI identified from a photograph as Maxey) in the area of 30th Street and Martin Luther King Jr. Way within 72 hours of May 14, 2010 carrying a gun upon his person. Exhibit A to the Motion at 4.

The affidavit stated that Maxey is a convicted felon and is currently on parole for possession of crack cocaine for sale. Id. at 3. The CI described the gun and said that he saw it inside Maxey's waistband area and that Maxey was showing it off to other gang members in the area. Id. at 4.

According to the affidavit, the CI is a "credible and reliable informant," who is familiar with "street terminology" used to describe different types of guns used by people committing crimes

**United States District Court**
For the Northern District of California

in Oakland. Exhibit A at 3. Officer Valle stated in the affidavit that the CI is credible because the CI has correctly identified people who Officer Valle was investigating as gang members; because the CI identified locations from which gang members were selling drugs, and that Officer Valle had seen drug transactions at these locations; and because the CI gave information about unsolved homicide cases involving gang members that was corroborated by information obtained independently by homicide investigators. Exhibit A at 4. The affidavit stated that the CI is providing information "for leniency consideration." Id.

Officer Valle's affidavit stated that the CI also had told him that the CI recently had heard Maxey state that he was living with his girlfriend Synetta in the Lower Bottoms area of Oakland. Id. Officer Valle knew Synetta to be Synetta McDaniels ("McDaniels"). Id.

Maxey had been stopped on April 3, 2010, while driving a black Ford Escort that the affidavit stated was "currently registered to Synetta McDaniels" at a residence in Oakland. Id. Maxey and McDaniels also had been stopped, in the Ford Escort, for driving without a license plate on April 15, 2010. Id. Officer Valle stated in the affidavit that Oakland police officer McGiffert, who conducted the latter traffic stop, "reported that Maxey and McDaniel's [sic] home address" was the residence for which Valle sought to obtain the search warrant. Id. This

3

**United States District Court**
For the Northern District of California

residence is within the Lower Bottoms area of Oakland. Id. Officer Valle determined, through Officer Bradley Baker's contact with the Oakland Housing Authority ["OHA"], that McDaniels, with her two children, was the registered tenant of the Oakland residence. Id. at 5. Officer Baker also reported having seen the Ford Escort which had been driven by Maxey parked near this residence on May 13, 2010. Id. Officer Baker determined through OHA that Maxey was "no longer the listed tenant" for an apartment in Oakland ["Oakland apartment"] that was his listed parole address. Id.

Based on the information provided by [the CI], Officer Valle believed that Maxey had "at least one semi-automatic handgun" in the residence. Id. Officer Valle stated that, based on his experience, "gang members involved in narcotics trafficking and weapons violations often possess additional evidence of such at their residences." Id. He stated that it is common for gang members on parole or probation with a search clause not to live at their listed parole or probation addresses. Id.

A state court judge issued the search warrant on May 14, 2010. The warrant authorized police to search the stated residence for and to seize three categories of property: Narcotics/ Drugs/ Controlled Substances; Firearms, and related items; and Gang Indicia.

A search of the residence was conducted pursuant to the warrant on May 20, 2010. Maxey and Synetta McDaniels were present

4

**United States District Court**
For the Northern District of California

when police arrived. During the search the police located a gun, which is the subject of the charges against defendant, as well as two baseball caps, which the police took as gang indicia.

Maxey brought this motion to suppress. He alleges that the search warrant was improperly granted and therefore the fruits of the search should be suppressed. Defendant denies the veracity of the information asserted in the warrant regarding him having showed off a weapon and further denies that he had made any statements, at the time referenced, about living with his girlfriend. The defendant claimed that Valles' affidavit was a fabrication and questioned the existence of a confidential informant and whether any such informant had actually made the statements reported to the judge by Officer Valle.

Based on the above concerns, the Court held an *in camera* proceeding at which the informant appeared and testified as to contact with Officer Valle. The Court thereafter determined that no further evidentiary hearings on the matter would be needed as discussed below.

**II.   Discussion**

Defendant argues that the warrant was the product of false and misleading statements; that even if one were to consider the alleged false and misleading statements that the affidavit does not establish probable cause; that the warrant was overbroad, requiring suppression of the total warrant; that the government has not

carried its burden of demonstrating that the good faith exception to the warrant requirement applies; and that the government has not met its burden of establishing that the search was a lawful parole search.

A.   Did Officer Valle provide false and/or misleading statements in the warrant application?

Defendant argues that the warrant should not have been issued as it was supported by false and misleading statements asserted to have been made by a confidential informant who defendant asserts does not exist, and also because statements in the affidavit made by Officer Valle as to defendant's residence were either intentionally or recklessly misleading.

1.   Does the Confidential Informant Exist?

The government argues that the warrant application is supported by probable cause based on statements of a confidential informant who is (a) reliable and (b) whose statements were to a certain extent corroborated by the police.

The defendant questioned the existence of the alleged informant based on: (a) the conclusory nature of the statements ascribed to the informant; (b) the police officer's failure to include any specific information about the informant's police record; (c) defendant's affidavit denying under oath that the statements about the gun and his living situation ascribed to him by the information were in fact made by him; and (d) the fact that at the time the police applied for the affidavit, homicide

investigators were conducting an investigation of the murder of the person from whose body the defendant is alleged to have taken the gun in question.

The two key assertions of the informant on which the affidavit rests are that the informant alleged that he/she saw Maxey showing off the gun to gang members in the area of 30th Street and Martin Luther King Jr. Way within 72 hours of the date of the affidavit, May 14, 2010.  The informant is also alleged to have stated that he or she overheard Maxey discussing that he lived with his girlfriend, Synetta in the Lower Bottoms area of Oakland.  These assertions were the linkage between the gun and the residence searched. The residence information was ostensibly corroborated when police stopped Maxey and Synetta McDaniels during a traffic stop on April 15, 2010.

Maxey filed a sworn declaration disputing these two facts.  He states in his declaration that he did not have the gun in his waistband or display the gun in the physical area described by the informant within the time period stated in the affidavit.  He also denies that he told people in mid-May that he was living with McDaniels or that he gave the officers her address as his own during the April 15, 2010 traffic stop.

Defendant further questioned the existence of the informant based on the lack of specificity in the informant's statements about the time, date, location and circumstances as to where Maxey

United States District Court
For the Northern District of California

7

allegedly showed the gun and also where and when he allegedly told people about his living situation.

Defendant also questioned the existence of the informant based on the fact that there are no details in the affidavit regarding the informant's criminal history.  The only disclosure in this regard is the mention in the affidavit that the informant is cooperating for "leniency consideration."  The omissions may be troubling, but they are not fatal to the warrant application.  <u>See</u> <u>United States v. Reeves</u>, 210 F.3d 1041, 1045 (9th Cir. 2000) and <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988).

Defendant argues that the appropriate recourse for this uncertainty about the existence of the informant is for the Court to have an in camera hearing to question Officer Valle about the existence of the informant.  <u>See</u> <u>U.S. v. Reeves</u>, 210 F.3d 1041, 1045 (9th Cir. 2000).

Based on all of the concerns raised by defendant, the Court did find that an *in camera* proceeding with the confidential informant was warranted.  The Court held such a hearing.  Prior to the hearing, the Court did not solicit questions from the defendant to be asked of the confidential informant. The defense had indicated that it was willing to submit questions, and the Court acknowledges that had such an opportunity been offered, the defense would have taken advantage of that chance.  Nonetheless, neither the opportunity to present questions nor the use of questions

provided by the defense is required by due process.  Defense counsel acknowledged at the later hearing on this motion that the Court is capable of ascertaining the necessary information without the use of questions presented by the defense.  Nor was the Court willing, as requested by the defendant, to provide defendant with a redacted transcript of the proceeding, as such would undermine the *in camera* nature of the proceeding.  Having conducted such a proceeding, the Court satisfied itself that Officer Valle's representations in the warrant regarding statements by a confidential informant had a basis in fact and were not misleading.

> 2.   Are Valle's statements about Maxey's residence Misleading ?

Defendant states that Officer Valle's statements in the affidavit regarding defendant's residence omit certain facts, the effect of which is to make the affidavit intentionally or recklessly misleading.  As noted above, the bases for the warrant stating that Maxey lived in McDaniels' residence were: (1) the confidential informant's report that Maxey stated that he was living with Synetta; the April 15 traffic stop and the fact that Maxey had been observed driving McDaniels' black Ford Escort, which was parked near McDaniels' home.

There is some factual question about what defendant stated

United States District Court

For the Northern District of California

9

United States District Court

For the Northern District of California

about his residence during the April 15, 2010 traffic stop[1]  and

there are is also some uncertainty about what the state of

defendant's lease was.[2]  According to Maxey he was only an

occasional guest at McDaniels' residence and he had no key to her

residence, did not keep his belongings there and did not receive

mail there. The Court notes that Maxey was in fact at McDaniels'

house when the warrant was executed.  Moreover, the Court has

satisfied itself about the statement of the confidential informant

regarding Maxey's statements about his place of residence.

Therefore, defendant's argument that the affidavit was

intentionally misleading on the issue of defendant's address is

unavailing.

> 3.  <u>Statements about Maxey in Relation to Drugs</u>

Defendant also asserts that the affidavit is misleading in

---

[1] As to the traffic stop, at the stop there were two officers, Officer McGiffert and his partner, Officer Johnson.  According to the report, Johnson spoke with Maxey and McGiffert spoke with McDaniels.  However, it is McGiffert, not Johnson who is alleging that Maxey told him that he lived at Synetta's residence.  There appears to be some room for questioning the accuracy of this report.

[2] The affidavit stated that Maxey had been removed from the lease of the residence which was his parole address, but again the facts on this are unclear.  On the 2002 lease, Maxey's name is crossed out with the word "delete" written on it. Defendant indicates that this means that he was taken off the list in 2002. However, the date that this change to the lease was made is not clear.  There is no date next to the annotation.  Valle states that he did not know when he submitted the affidavit when Maxey had been removed from the lease, although Special Agent Huggins states that on March 25, 2011 an agent from the Oakland Housing Authority told him that Maxey had been removed from the lease in 2008.

that it intimates that he is a drug dealer and there are facts which were available to Officer Valle but which he chose not to include which controvert this assumption.  The affidavit states that Valle had observed defendant "facilitating" narcotics sales. It is unclear what this means.  In the eight police contacts with Maxey that the government references in its opposition, the police searched Maxey during most of those contacts.  The only drugs found were small amounts of cough syrup with codeine. The Court does not find that there is any sufficient showing that the statements about drugs were intentionally misleading such that the warrant should not have issued.

B.  <u>Does the Court need to hold a Franks hearing</u>?

A defendant is entitled to a <u>Franks</u> hearing to challenge the validity of a search warrant affidavit upon a substantial preliminary showing that the affiant deliberately or recklessly included false statements in the affidavit. <u>United States v.</u> <u>Napier</u>, 436 F.3d 1133, 1136 (9th Cir. 2006). Specifically, the defendant must (1) allege the specific parts of the warrant that he claims are false; (2) allege that these false statements were made deliberately or with reckless disregard for the truth; (3) present a detailed offer of proof; (4) challenge the veracity of the affiant; and (5) show that the false statements are necessary to establish probable cause for the warrant. <u>United States v. Kiser</u>, 716 F.2d 1268, 1271 (9th Cir. 1983). A defendant also may

11

United States District Court
For the Northern District of California

"challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead." United States v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985).  Given the results of the in camera proceeding, and the Court's analysis stated above, the Court finds that there is no requirement to hold a Franks hearing.

C.  Does the Good Faith Exception to the Warrant Requirement Apply Here?

The government contends that even if the warrant lacked probable cause, the officers conducting the search should have been able to rely on it and thus the search falls into the good faith exception to the warrant requirement.  The government bears the burden on this point.  United States v. Leon, 468 U.S. 897, 913 (1984).  The Leon exception does not apply if the affidavit so lacked indicia of probable cause that an officer could not reasonably have relied on it.  Id. at 923.  As noted above, this is not the case.  It may be that some of the information in the warrant is lacking in specificity, however giving proper credit to the information supplied by the Confidential Informant, the warrant relying on the warrant was not, as a matter of law, unreasonable.

D.  Could the Government Have Searched Anyway as a Result of Maxey's Probation Conditions?

The government claims that, in any event, the police could have searched Maxey because of his parole condition.  This argument is based on two notions.  First, the police had to have known at

12

United States District Court

For the Northern District of California

the time of the search about his parole conditions. Given the number of times that Maxey had been stopped and searched previously, his general familiarity to the OPD, and the accessibility of his parole status by police radio, it seems reasonable to believe that the OPD officers would have been aware of his parole status prior to a search.

The second issue was whether the police could have appropriately thought about that defendant resided with McDaniels in her home.  Since the confidential informant had stated that Maxey was living with McDaniels, this could have been a sufficient basis for the police to believe that the Residence was within the scope of Maxey's search conditions.  However, given the Court's findings that the search warrant was proper, there is no need to determine this issue.

**III.   CONCLUSION**

For the reasons outlined above the Court DENIES defendant's Motion to Suppress Evidence.


IT IS SO ORDERED

Dated: August  12, 2011                    _____

                                           D. Lowell Jensen
                                           United States District Judge